OPINION OF THE COURT
Alan LeVine, J.
This is a motion by defendants pursuant to CPLR 3212 for summary judgment dismissing the complaint on the ground that plaintiff has failed to state a prima facie case of "serious injury” within the meaning of the No-Fault Law (Insurance Law § 671 [4], recodified as § 5102 [d]).
Plaintiff opposes the application.
Plaintiff claims that on February 20, 1981, she was driving her automobile when she was involved in an intersection collision with another vehicle. Plaintiff alleges that there was a great impact resulting in substantial damage to her automobile and serious injury to her requiring her to see an eye doctor and subsequently a psychiatrist. She consulted the psychiatrist for a period of approximately one year.
*522 Plaintiff’s bill of particulars alleges that she sustained "post-traumatic neurosis syndrome consisting of nightmares, insomnia, anxiety, fear of situations similar to that in which the car crash occurred and decreased appetite * * * lack of concentration especially with respect to the requirements of her job * * * undue and residual stress * * * apprehension and fearfulness especially while driving.”
The bill of particulars further states that "[t]he requirements of plaintiff to drive a car which is an essential part of her job, were sharply curtailed due to her fear to drive. The fearfulness while driving is still in existence thereby curtailing the plaintiff from driving for pleasure, to which she was accustomed, prior to the accident.”
Four medical reports from Michelle L. Hirsch, M.D., Assistant Professor of Psychiatry at Columbia University, are annexed to defendant’s moving papers. In a report dated April 10, 1981 Dr. Hirsch diagnosed plaintiff’s condition as "post traumatic neurosis syndrome following a car crash on February 20, 1981. This consisted of nightmares, insomnia, anxiety, fear of situations similar to that in which the crash occurred and decreased appetite. The acute syndrome lasted about four weeks, but Mrs. Poblet still complains of insomnia, anxiety, and fear of a car crash at times. Valium and brief psychotherapy were prescribed.”
In a report dated June 10, 1981 the doctor stated that the plaintiff continued to suffer from posttraumatic syndrome and although fearful to drive, "since this is an essential part of her job, she forces herself to drive.”
In two subsequent reports the doctor confirms that during the months of March and April 1981, the plaintiff’s job as a social worker involved field work that demanded the daily use of her car and although it was stressful for her to do so, she did drive while working. The doctor’s final report dated March 8, 1982 indicated that through November of 1981 the plaintiff curtailed her pleasure driving substantially and as of March 1982, she was just beginning to drive for pleasure with a degree of comfort.
The first question presented herein is whether an alleged injury which is solely psychiatric and/or psychological may qualify as a "serious injury” within the meaning of the No-Fault Law.
With the exception of the decision in Lacomb v Poland Cent. School Dist. (116 Misc 2d 585) this specific question does not *523 appear to have been addressed in the case law construing the statute.
Insurance Law § 5102 (d) defines "serious injury” as "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”
"As originally enacted, the no-fault law contained a two-part (verbal and monetary) definition of the term 'serious injury’, meaning a personal injury:
" '(a) which results in death; dismemberment; significant disfigurement; a compound or comminuted fracture; or permanent loss of use of a body organ, member, function, or system; or
" '(b) if the reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services necessarily performed as a result of the injury would exceed five hundred dollars.’ (Insurance Law, § 671, former subd 4.)” (Hezekiah v Williams, 81 AD2d 261, 264.)
The 1977 amendment of the statute modified Insurance Law § 671 (4) (a) by eliminating the distinction as to fracture types and added the terms "permanent consequential limitation of use of a body organ or member”, and "significant limitation of use of a body function or system”. Paragraph (b) (the monetary standard) was deleted and replaced with a definition of a qualifying nonpermanent injury or impairment which is medically determined and prevents the injured person from performing substantially all of the material acts constituting such person’s usual and customary daily activities for not less than 90 days during the first 180 days immediately following the accident.
The present statute "appears to describe two broad categories of injuries which fall within the purview of 'serious injury.’ The first category is concerned with injuries that are *524 fatal, permanent, enduring, objective rather than subjective, substantial, extraordinary and/or severe.” (Hezekiah v Williams, 106 Misc 2d 407, 412, affd 81 AD2d 261, supra.) The second category is more subjective in nature, referring to any medically determined nonpermanent injury which endures for 90 days or more and substantially limits performance of daily activities. (See, Hezekiah v Williams, supra, p 412.)
The court notes that in the statute as originally enacted the costs which could be considered in computing the $500 threshold included "reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services necessarily performed as a result of the injury” (Insurance Law former § 671 [4] [b]).
Psychiatric expenses, although specifically included as an element of "basic economic loss” (Insurance Law former § 671 [1] [a] [ii]) were not included as an item to be considered in calculating whether plaintiff had met the $500 monetary threshold.
Under the statute as originally enacted, the only category of serious injury which could literally have been interpreted to include a psychiatric and/or psychological injury would have been the "permanent loss of use of a body organ, member, function, or. system” category. Clearly, to fall within that definition the loss of psychiatric and/or psychological function would have had to have been permanent.
Giving a literal interpretation to the statute as it presently reads, it is arguable that a psychiatric and/or psychological injury could also be categorized as (1) a significant limitation of use of a body function or system or (2) a medically determined nonpermanent injury disabling the party in the manner and for the time period indicated in the statute.
It is not clear to this court that the statute as originally enacted was ever intended to include an exclusively psychiatric and/or psychological injury within the definition of "serious injury”. Accordingly, the court is reluctant to construe the amended statute as providing two additional categories in which a plaintiff’s claim for nonpermanent psychiatric and/or psychological injury might fall.
Certainly, the 1977 amendment of the statute was not intended to expand the definition of serious injury.
This court clearly recognizes that
"one of the obvious goals of the Legislature’s scheme of no-fault automobile reparations is to keep minor personal injury *525 cases out of court. In support of this policy determination made by the Legislature, it seems only proper that the words [of the statute] should be construed consistent with the legislative intent * * *
"There can be little doubt that the purpose of enacting an objective verbal definition of serious injury was to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium’ (Memorandum of State Executive Dept, 1977 McKinney’s Session Laws of NY, p 2448).” (Licari v Elliott, 57 NY2d 230, 236.)
It appears to this court that an injury which is claimed to be psychiatric and/or psychological and which does not arise from any objective organic injury sustained in an accident is highly subjective in nature.
Bearing in mind the clear legislative intent underlying the No-Fault Law and being careful not to give the statute an overly restrictive interpretation, this court holds that to qualify as a "serious injury” an alleged psychiatric and/or psychological disorder should at least meet the requirements of the second "subjective” category of the statute, which includes any medically determined nonpermanent injury which endures for 90 days or more and substantially limits the performance of daily activities.
To the extent that it is contrary, this court respectfully disagrees with the holding of Lacomb v Poland Cent. School Dist. (116 Misc 2d 585, supra).
In the case at bar after reviewing the bill of particulars and the medical reports of Dr. Hirsch, it is clear that although the plaintiffs condition was medically determined to be a post-traumatic syndrome, it did not prevent her from performing substantially all of the material acts which constituted her usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
Even assuming, arguendo, that it would be proper to interpret the category of "significant limitation of use of a body function or system” as encompassing a psychiatric and/or psychological injury, the plaintiff has failed to adduce sufficient evidence on this motion to convince this court that there is a triable issue of fact as to the extent of plaintiffs alleged limitation of psychological function.
The Legislature could not have intended the type of psychi *526 atric and/or psychological disorder allegedly experienced by plaintiff to constitute a significant limitation of use of a body function or system. (Cf. Licari v Elliott, supra, at p 239.)
Accordingly, defendants’ motion for summary judgment is granted.