264 N.J. Super. 440 (1993)
624 A.2d 1047
ELISA S. GRANOWITZ, AND LEON GRANOWITZ, PLAINTIFFS,
v.
JAMES R. VANVICKLE, AND ANN VANVICKLE, DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil), Union County.
March 5, 1993.
*441 Monica C. Kowalski, for plaintiffs (Leonard & Leonard, attorneys).
*442 Philip L. Geibel, for defendants (Isaacson, Dougherty & Zirulnik, attorneys).
MENZA, J.S.C.
The defendants move for summary judgment on the basis that the plaintiff has failed to meet the verbal threshold.
The novel question presented is whether a psychiatric disorder may constitute a serious injury within the meaning of the no fault law.
The plaintiff was involved in an automobile accident with the defendant on May 27, 1991. As a result of the accident, the plaintiff received orthopedic treatment for injuries that she sustained to her neck, back, shoulders and arms. Additionally, the plaintiff underwent psychiatric treatment for mental distress.
The plaintiff's orthopedist treated her on only three occasions. He diagnosed her condition as "post traumatic cervical syndrome with post concussion syndrome as evidenced by headache formation," and referred her to a physical therapist. The orthopedist concluded that the plaintiff sustained a "significant injury requiring three months of convalescence and care in my hands ..."
A psychiatrist treated the plaintiff on 34 occasions, from June 26, 1991 to April 2, 1992. The psychiatrist's report stated:
The patient initially presented with symptoms of insomnia, over-eating, social withdrawal, re-experiencing, poor concentration, hypervigilance, avoidance of driving and ambivalence especially regarding her mother vs. her boyfriend.
The psychiatrist diagnosed the plaintiff with post traumatic stress disorder, cerebral contusion with severe headaches, and whiplash to neck. His prognosis was:
Good to excellent. Should the patient ever be victim to another auto accident, she would no doubt suffer similarly, but more severely. The last time I saw this patient she was free of her Post Traumatic Stress Disorder, but not her headaches. They may continue to bother her for the rest of her life.
The plaintiff lost only two and a half days from work immediately following the accident, but she contends that her activities have been severely restricted as a result of the injuries that she *443 sustained. She also contends that she continues to suffer headaches from the accident.
Based on the medical reports submitted by the plaintiff, this court has concluded that the plaintiff's orthopedic injuries are not serious and do not meet the requirements of the verbal threshold.[1]
The plaintiff now contends that her psychiatric injury is serious and meets three of the verbal threshold requirements, namely categories 7, 8, and 9.[2] The defendant argues that psychiatric injuries are not compensable under the no fault statute, and therefore the plaintiff's psychiatric disorder is not sufficient to meet the verbal threshold.
The New Jersey courts have not addressed the issue of whether a psychiatric injury may constitute a serious injury under the no fault law. The New York courts, however, have addressed this issue with regard to the New York no fault law, on which New Jersey's law is patterned. The New York courts have concluded that psychiatric and psychological injuries may constitute serious injuries within the meaning of the New York statute.
In Harris v. St. Johnsbury Trucking Co., Inc., 57 A.D.2d 127, 393 N.Y.S.2d 611, 612 (App.Div. 1977), the plaintiff sustained a "concussion of the brain and was suffering from a post concussion syndrome causing severe headaches and severe emotional sequelae, such as insomnia, memory defects, and depressive and anxiety neurosis." The court held that this evidence was sufficient to make out a prima facie case of serious injury under the no fault law.
*444 In Quaglio v. Tomaselli, 99 A.D.2d 487, 470 N.Y.S.2d 427 (App.Div. 1984), the presented psychiatric testimony that she suffered from post concussion syndrome, post traumatic stress disorder, and depression neurosis. The court concluded that this testimony constituted sufficient evidence from which a jury might conclude that the plaintiff sustained a serious injury within the meaning of the no fault law.
The court in LaComb By Claytor v. Poland Central School Dist., 116 Misc.2d 585, 455 N.Y.S.2d 994 (Sup. 1982), held that a psychologist's report regarding the plaintiff's emotional impairment could be sufficient to satisfy the verbal threshold:
Defendants argue that an attorney's affidavit, with an attached report of a non-medical doctor, is insufficient to defeat their motion for summary judgment. While medical evidence is necessary to meet some alternative definition of "serious injury," this court can find no such requirement where the injury alleged is psychological or psychiatric in nature and where a report of a State-certified clinical psychologist sufficiently alleges, in expert opinion form, "a serious emotional impairment" which "significantly limits her ability to function" and results in an "ongoing residual difficulty." Any attack on the weight to be given to such evidence should await trial.

[Id. 455 N.Y.S.2d at 995 (citations omitted).]
The court in Poblet v. Parisi, 130 Misc.2d 521, 496 N.Y.S.2d 936 (Sup. 1985), however, disagreed in part with the holding in LaComb. In Poblet, the plaintiff alleged that she had suffered a post traumatic neurosis syndrome consisting of nightmares, insomnia, anxiety and a fear of driving. The issue presented was whether psychological injuries fit within any of the verbal threshold categories. The court reasoned that, when the amended no fault statute was literally interpreted, it was arguable that a psychiatric or psychological injury could fit within two of the enumerated categories: 1) a significant limitation of use of a body function or system, or 2) a medically determined non-permanent injury disabling the party in the manner and for the time period indicated in the statute. Id. 496 N.Y.S.2d at 939. The court noted, however, that under the original no fault statute the only category of serious injury which could include psychological injuries would have been *445 the "permanent loss of use of a body organ, member, function, or system" category. Ibid. The court went on to state:
It is not clear to this court that the statute as originally enacted was ever intended to include an exclusively psychiatric and/or psychological injury within the definition of "serious injury." Accordingly, the court is reluctant to construe the amended statute as providing two additional categories in which a plaintiff's claim for non-permanent psychiatric and/or psychological injury might fall.

[Ibid.]
The Poblet court held that a psychological disorder may, in fact, constitute a serious injury within the meaning of the no fault law. However, the court restricted its holding by stating that, in order to qualify as a serious injury, the psychological disorder must fall within Category 9 of the statute. The court held:
Bearing in mind the clear legislative intent underlying the no fault law and being careful not to give the statute an overly restrictive interpretation, this court holds that to qualify as a "serious injury" an alleged psychiatric and/or psychological disorder should at least meet the requirements of the second "subjective" category of the statute, which includes any medically determined non-permanent injury which endures for 90 days or more and substantially limits the performance of daily activities.
To the extent that it is contrary, this Court respectfully disagrees with the holding of LaComb v. Poland Cent. School, 116 Misc.2d 585, 455 N.Y.S.2d 994.

[Ibid.]
The New Jersey no fault statute does not define the phrase "permanent consequential limitation of use of a body function or system," or the phrase "significant limitation of use of a body function or system." Nor does the statute define the phrase "medically determined injury or impairment of a non permanent nature." And there is nothing in the statute's legislative history to assist in the interpretation of those categories. There is also nothing in the statute to suggest that those categories are limited to physical injuries. In fact, this court is of the opinion that the compensable injuries contemplated by the no fault statute include psychological injuries as well as physical injuries. Given the fact that our courts have consistently held that psychiatric and psychological injuries are real, and are to be compensated, there is no *446 reason to conclude otherwise. As was stated in Berman v. Allan, 80 N.J. 421, 433, 404 A.2d 8 (1979):
[C]ourts have come to recognize that mental and emotional distress is just as "real" as physical pain, and that its valuation is no more difficult. Consequently, damages for such distress have been ruled allowable in increasing number of contexts. [(citations omitted); See also Saunderlin v. E.I. DuPont Co., 102 N.J. 402 [508 A.2d 1095] (1986) (where the Supreme Court concluded that psychiatric disability was compensable under the workers' compensation statute); Pushko v. Bd. of Tr. of Teachers' P & A, 202 N.J. Super. 98 [493 A.2d 1309] (App.Div. 1985) (in which the Appellate Division held that psychiatric disability qualified under a teacher's accidental disability pension).]
It is true, of course, that psychiatric and psychological injuries are "highly subjective in nature," easily fabricated, and at times, perhaps, only imagined. But this does not mean that they should not be compensated. As Prosser explains:
It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem from this perspective is one of adequate proof, and it is not necessary to deny a remedy in all cases because some claims may be false. And where the concern is to avoid imposing excessive punishment upon a negligent defendant, it must be asked whether fairness will permit leaving the burden of loss instead upon the innocent victim. Such are the basic policy issues with which the courts continue to struggle in defining the limits of liability for negligently inflicted emotional harm.
[W. Page Keaton, et al., Prosser and Keeton on the Law of Torts, § 54, at 361 (5th ed. 1984).]
This reasoning was espoused in Falzone v. Busch, 45 N.J. 559, 566-67, 214 A.2d 12 (1965), where the Supreme Court held that the possibility of fraudulent actions being filed for recovery on fictitious injuries should not bar recovery on rightfully grounded actions. The Falzone Court reasoned that the rules of evidence and the requirements as to the sufficiency of evidence provide the trial courts with adequate control to safeguard against the danger that juries will find facts without legally adequate proof. Id. at 567, 214 A.2d 12. The Court stated:
To hold that all honest claims should be barred merely because otherwise some dishonest ones would prevail is stretching the public policy concept very close to the breaking point, especially since it is quite as simple to feign emotional disturbance plus slight impact and get in "under the wire" of one of the exceptions as it is to feign emotional disturbance sans impact. The arbitrary denial of recovery in all cases not falling within the realm of one or another of the exceptions *447 discourages the bringing of meritorious actions and at the same time allows the prosecution of fabricated claims, for surely those capable of perjuring evidence will not hesitate to manufacture one additional feature of the occurrence  a slight impact  to insure recovery.
[Id. at 566-67, 214 A.2d 12, (citations omitted) (quoting McNiece, Psychic Injury and Liability in New York, 24 St. John's L.Rev. 1, 31 (1949).]
Mental and emotional distress can be as painful and debilitating as a physical injury  perhaps at times more so. A severe mental problem may result in incapacity or limitation in one's ability to function. It would be cruel and unjust to deny adequate and proper compensation to persons who suffer from such injuries as a result of the negligence of another person. This court, therefore, concludes that a psychological disorder may constitute a serious injury which satisfies the verbal threshold criteria.
However, the psychiatric or psychological injury must be substantial in order to result in a permanent consequential limitation of use of a body function or system, significant limitation of use of a body function or system or incapacity for a period of time. Further, the mental injury must be capable of objective proofs.
In Eyrich for Eyrich v. Dam, 193 N.J. Super. 244, 473 A.2d 539 (App.Div. 1984), the court held that in order for a claimant to recover for emotional injury the proofs must demonstrate that it is one of moment and not one merely trivial or fleeting. The court noted that the New Jersey courts follow the Restatement view, which provides that, in order to be compensable, emotional disturbance must be "sufficiently substantial to result in physical illness or serious psychological sequelae." Id. at 253, 473 A.2d 539. The comment to the Restatement further provides:
The rule stated in this Section applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law.

*448 [2 Restatement Torts 2d § 436A at 461, comment c (1965).]
In Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), the Court rejected the argument that subjective complaints alone may be sufficient to satisfy the verbal threshold requirement and defeat a motion for summary judgment. The Oswin Court held that:
[p]laintiffs must submit objective, credible evidence that could support a jury finding in his or her favor. We respect the abilities of medical professionals to ascertain the presence of a genuine, disabling injury, but we nevertheless are satisfied that the Legislature sought to guard against a finding of "serious injury" when plaintiff's proofs are based solely on subjective complaints of pain.

[Id. at 319, 609 A.2d 415.]
The Oswin test must be applied to psychological injuries if they are to meet the verbal threshold requirements. The difficulty, however, in applying the objective evidence test to psychological injuries is that these types of injuries are rarely manifested by physical signs, and their diagnosis and treatment are usually based on a patient's subjective complaints.
In Saunderlin v. E.I. DuPont Co., supra, the Court addressed this very same problem in the context of a workers' compensation case. In that case, the Court held that the statutory requirements that an injured person produce demonstrable objective evidence of an injury applies to psychiatric disabilities, as well as to physical disabilities. But the Court also recognized the difficulties of such proofs with psychiatric or psychological injuries:
"Demonstrable objective medical evidence" is a legal term peculiar to the New Jersey Workers' Compensation Act, not a medical term pervasive in physicians' and psychiatrists' vocabularies ... Nevertheless, if the point of requiring this type of evidence is to interpose a professional medical judgment between the patient's statement and the award of benefits, then medical analogies to this legal term may suggest a helpful gloss. The closest analogy to a conception of what constitutes demonstrable objective medical evidence that the DSM-III offers is suggested by its lists of "diagnostic criteria" of mental disorders. These diagnostic criteria typically include not only physical manifestations observable independently of the patient's statement but also descriptions of state of mind discoverable only through that statement. The former are "objective" in the sense that they are physical, the latter are "subjective" in the sense that they are mental; but, as established above, this is not the sense of the statute. Both types of diagnostic criteria are objective within the meaning of N.J.S.A. 34:15-36.

*449 [Saunderlin, 102 N.J. at 412-14, 508 A.2d 1095 (citations omitted).]
The Court concluded that the application of the DSM III criteria would provide some guidance in determining what constitutes objective medical evidence in the context of psychological injuries. The Court stated:
Within this framework, we conclude that a psychiatrist's testimony as to either or both sorts of diagnostic criteria  manifestations of physical symptoms or descriptions of states of mind  might constitute demonstrable objective medical evidence as the profession of psychiatry conceives it. It therefore might suffice to interpose a professional psychiatric judgment between the subjective statement of the petitioner and the award of disability benefits, as the Legislature requires. A professional psychiatric judgment derived from any or all of these bases might constitute demonstrable objective medical evidence of psychiatric disability as it is defined in the Joint Statement, for all exceed without excluding the subjective statement of the patient.
We cannot definitively declare in general what evidence would be sufficient to support an award for permanent partial psychiatric disability. But we can confidently state two things. One, in no event will a medical doctor's mere "parroting" of the patient's statement be sufficient. And two, if "the law must choose between having good medicine or bad medicine in its courtrooms," the Legislature (as shown by the statutory definition and legislative history) has chosen to require relatively good medicine, here relatively good psychiatry. In effectuating that choice, courts to some extent must rely upon the psychiatrist's professionalism in deploying the clinical method to insure that his or her analysis meaningfully exceeds parroting the subjective statement of the patient.

[Id. at 416, 508 A.2d 1095 (citations omitted).]
This court agrees with Saunderlin that psychological injuries, like physical injuries, may be proven by objective medical evidence. The court's role, therefore, on a motion for summary judgment under the no fault law is to determine whether the plaintiff has submitted objective evidence of a psychological disorder which could support a jury finding that the disorder is serious within the meaning of one or more of the threshold categories.
In this case, the plaintiff suffered a psychological disorder which resulted in some temporary disability. However, the psychiatrist's prognosis of "good to excellent" demonstrates that the plaintiff's psychological injuries were not debilitating or disabling. As a result, the plaintiff has failed to submit objective, credible medical evidence of her psychological injuries which could support *450 a jury finding that she has met any of the verbal threshold categories.[3]
The defendants' motion is granted.
NOTES
[1] The reasons for this conclusion have been set forth on the record.
[2] (7) permanent consequential limitation of a use of a body organ or member; (8) significant limitation of use of a body function or system; (9) a medically determined injury or impairment of a non permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. N.J.S.A. 39:6A-8.
[3] The reasons for this conclusion are set forth on the record.