**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1329-18T2

H.K.S.,[1]

     Plaintiff-Appellant,

v.

PAUL M. KENSEY,

     Defendant-Respondent,

and

CARMELA MORRIS and
WILLIAM MORRIS,

     Defendants.

_____

     Argued telephonically March 25, 2020 –
     Decided May 18, 2020

     Before Judges Koblitz, Whipple and Gooden Brown.

     On appeal from the Superior Court of New Jersey, Law
     Division, Union County, Docket No. L-0531-17.

---

[1] Because plaintiff was a victim of sexual abuse as a child, we use initials to protect her confidentiality. See R. 1:38-3(c)(9).

Melvin R. Solomon argued the cause for appellant (Parsekian & Solomon, PC, attorneys; Melvin R. Solomon, on the briefs).

Lauren M. Santonastaso argued the cause for respondent (Cooper Maren Nitsberg Voss & DeCoursey, attorneys; Lauren M. Santonastaso, on the brief).

PER CURIAM

Plaintiff appeals from the October 29, 2018 summary judgment dismissal of her auto accident related personal injury complaint filed against defendant Paul Kensey. The complaint was dismissed on the ground that she failed to meet the verbal threshold under N.J.S.A. 39:6A-8(a), which is part of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35.

> Under AICRA, to vault the verbal threshold's limitation on the right to claim non-economic damages, a plaintiff must establish that "as a result of bodily injury, arising out of the . . . operation . . . or use of" an automobile, she has "sustained a bodily injury which results in" one of the enumerated categories of serious injury, including "a permanent injury[2] within a reasonable degree of medical probability."
>
> [Davidson v. Slater, 189 N.J. 166, 186 (2007) (alterations in original) (quoting N.J.S.A. 39:6A-8(a)).]

---

[2] For purposes of AICRA, a permanent injury is "when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8(a).

Based on our review of the record and the applicable legal principles, we affirm.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)). On April 11, 2015, plaintiff was involved in an automobile accident with a vehicle owned and operated by defendant, during which defendant's Honda pick-up truck struck plaintiff's Honda Accord with such force that her vehicle rear-ended the Ford Escape in front of her being driven by Carmella Morris.[3] On February 1, 2017, plaintiff filed a complaint, alleging she "suffered severe and permanent injuries" as a result of defendant's negligence. Although plaintiff initially asserted she sustained permanent physical and psychiatric injuries from the accident, she recovered from the physical injuries but maintained her claim for psychiatric injuries.

One month after the accident, on May 11, 2015, plaintiff, then fifty-seven years old, began treating at Princeton House Behavioral Health Center

---

[3] Carmella Morris and William Morris, owner of the Ford Escape, were also named defendants in plaintiff's complaint, but they were granted summary judgment dismissal of the claims and cross-claims against them on May 11, 2018.

A-1329-18T2

(Princeton House) based on a referral from her treating psychiatrist for a "higher level of care due to increasing symptoms of depression, anxiety, and [post-traumatic stress disorder (PTSD)]." Plaintiff had "a history of Bipolar Disorder type II, polysubstance dependence, noted to be in full remission for over [eighteen] years, Generalized Anxiety Disorder [GAD], and [PTSD]." Previously, she had "multiple treatment episodes" at Princeton House, having last treated there "in August 2012."

Plaintiff's medical records, including her treatment notes at Princeton House, were reviewed on November 3, 2017, by Alain De La Chapelle, M.D., a Board-certified psychiatrist retained by plaintiff's auto insurance carrier. According to Dr. De La Chapelle, the treatment notes indicated that since the accident, plaintiff expressed a "re-triggering of PTSD related to sexual abuse while she was a child, including increased nightmares about being chased and trapped, feelings of loss of control, being bothered by noises, erratic sleep, increased isolation and lack of activity, and increasing depression." Plaintiff was admitted to Princeton House's "partial hospital program" based on her report of "depressed mood, social isolation, loss of interest, insomnia, nightmares, hypervigilance, intrusive memories, poor concentration, feelings of dread, panic attacks, and suicidal ideation" resulting in "multiple functional impairments."

4

From August 3 to 12, 2015, plaintiff was admitted for inpatient treatment at Princeton House "for stabilization." The treatment notes specified that while plaintiff "initially experienced an aggravation of her symptoms due to the accident," hospitalization was required because plaintiff "shifted to a hypomanic state, which [was] related to [her] bipolar condition." Following her discharge, plaintiff continued to receive outpatient psychiatric therapy, including psychotropic medications.

After filing the complaint, on June 1, 2018, plaintiff underwent an independent medical evaluation conducted by Steven Lomazow, M.D., a psychiatrist and neurologist. Dr. Lomazow opined that plaintiff's ongoing psychiatric treatment, which she would receive "for the remainder of her life," was not related to the accident. According to Lomazow, plaintiff's psychiatric treatment was of the same "frequency that she had prior to the [accident]" and would have continued "whether or not she had had the intercurrent motor vehicle accident."

On June 25, 2018, plaintiff was deposed. She testified that she "was traumatized" as a result of the accident and "not functioning very well." She explained that "[a] week" after the accident, she "[a]void[ed] driving," and had "[p]anic attacks, night terrors, [and] depression." She also testified that she was

5

"not doing good self[-]care," such as bathing, and she was "not doing any normal activities," such as frequent attendance at "[narcotics anonymous (NA)] meeting[s]," volunteering for NA, socializing "with friends," participating in "hobbies," "shopping" or "cleaning." She explained that when she had experienced "these incidents of acute mental illness" in the past, she would "bounce[] back" in "[t]hree" to "four months" after undergoing "inpatient" and "outpatient" treatment. However, since the accident, she has not "gotten substantially better."

Thereafter, on August 3, 2018, defendant moved for summary judgment[4] on the ground that plaintiff failed to provide any evidence of permanent injury, and failed to provide the requisite physician's "Certificate of Permanency," establishing that she sustained permanent injuries as a result of the accident. See Casinelli v. Manglapus, 181 N.J. 354, 364-66 (2004) (explaining that the physician certification requirement of AICRA "provide[s] evidence that a plaintiff's claim is meritorious in that he or she has, in fact, sustained an injury that qualifies for the recovery of non-economic damages under the revised AICRA verbal threshold," and when "a plaintiff is unwilling or unable to

---

[4] On May 11, 2018, plaintiff was granted summary judgment against defendant on the issue of liability only.

produce a physician certification . . . . the litigation cannot go forward and . . . the complaint should be dismissed."). Further, defendant asserted that because plaintiff had "documented psychological disorders, a Polk[5] [a]nalysis was required to satisfy the requirements of . . . N.J.S.A. 39:6A-8(a)."

In the accompanying statement of material facts, defendant recounted Lomazow's opinion and the Princeton House treatment notes, as well as plaintiff's interrogatory responses, and deposition testimony. Defendant noted that despite plaintiff's claim that the accident caused "a relapse and exacerbation" of her prior psychiatric condition, the Princeton House records indicated that plaintiff's complaints of nightmares were "related to the sexual trauma," not the car accident. Further, in her deposition testimony, plaintiff indicated that "panic attacks and nightmares/night terrors occurred prior to the . . . accident," and her diagnosis of bipolar disorder and depression, to which she "attributed her difficulties with activities," "dat[ed] back ten years." Additionally, plaintiff "had anxiety related to driving as a result of [a] prior accident" that occurred on July 21, 2011.

---

5 Polk v. Daconceicao, 268 N.J. Super. 568, 575 (App. Div. 1993) (holding that "[a] diagnosis of aggravation of a pre-existing injury or condition must be based upon . . . an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma.").

Plaintiff opposed the motion and submitted a physician certificate and report dated September 14, 2018, prepared by Joel S. Federbush, M.D., a psychiatrist, who examined plaintiff on September 12, 2018, at the request of her attorney. In the certificate, Federbush stated "plaintiff presented with a condition of depression and the inability to function as a result of the accident." "Upon [his] review of her past psychiatric history and [his] examination of her," he was of the opinion that plaintiff "sustained a chronic depressive condition as a result of the accident," that plaintiff's "psychiatric injuries [were] causally related to the . . . accident," and that plaintiff's injuries were "permanent."

In his report, Federbush stated that plaintiff "described the same psychiatric symptoms to [him]" as those documented in the Princeton House medical records, which symptoms were also "consistent with [her] deposition testimony." In that regard, Federbush stated that during his examination of plaintiff:

> We discussed her past history of bi-polar disorders and anxiety[] depressions. [Plaintiff] told me that the . . . accident had been traumatic and caused her great psychiatric harm. She had prior incidents of depression some of which required brief hospitalization but on each prior occasion she has . . . recovered quickly from the depression and had significant periods of normalcy during which she lived a relatively stable life. She said that she has yet to "bounce back" from the . . . [accident]. She reported night terrors, lack of sleep or

8                                                                    A-1329-18T2

motivation, the inability to concentrate when reading, and lack of interest in her past activities such as visiting museums and botanical gardens. . . . She also noted that she was active in [NA], playing a leadership role. . . . She has very little interest in attending or becoming involved in these meetings. She even finds normal daily activities such as showering, bathing or eating to be stressful. [Plaintiff] also noted that she found [driving] a car to be very stressful and is reluctant to travel long distances.

Based upon his examination and review of plaintiff's "psychiatric record and history," Federbush opined "within a reasonable medical certainty, that [plaintiff] suffered a severe and permanent psychiatric injury as a result of the . . . accident." Federbush found that plaintiff

has developed chronic long lasting depression. It is now three years and five months since the accident and there has been little improvement in her depressive state. The psychiatric injuries as a result of the . . . accident are more severe than previous admissions. In all of the other instances, [plaintiff] "bounced back" from bi-polar depressive episodes. Those instances lasted three or four months. Her chronic depressive state from this incident has lasted three year[s] and five months and continues[.] In all medical probability it is a permanent condition that did not exist before. Based upon the lengthy period after the . . . [accident] during which [plaintiff] has been suffering . . . depression related symptoms, within a reasonable degree of medical certainty this condition is permanent.

During oral argument, defendant argued that even with Federbush's report, which was provided "well after the discovery end date," there was "no objective

evidence of any permanent injury" and no "[Polk] [a]nalysis." In support, defendant pointed out that "to form his conclusions," the doctor "relie[d] completely on . . . plaintiff's own subjective complaints," failed to "perform any . . . testing," and failed to "perform an analysis of her condition before the accident as well as after the accident." Plaintiff countered that Federbush provided objective evidence of plaintiff's psychiatric injury by reviewing her records, examining her, and discussing her symptoms with her. Plaintiff's counsel conceded that Federbush failed to perform a Polk analysis but indicated "that could be done at a future time."

In an October 29, 2018 order, the motion judge granted defendant summary judgment. In an accompanying written opinion, after applying the governing principles, the judge concluded that "[e]ven granting all favorable inferences to [p]laintiff" as required, plaintiff "has failed to raise a genuine issue of material fact that the tort threshold was satisfied." The judge explained that plaintiff relied on Federbush's "Certification of Permanency" and "narrative report" as well as De La Chapelle's "review of medical records" "as objective evidence of her lasting psychological harm." However, Federbush's "opinions were based solely on his psychiatric examination of [p]laintiff, which involved

only a discussion with [p]laintiff of her complaints and the review of [p]laintiff's medical records." Further, "a [Polk] [a]nalysis was required and was not done."

According to the judge, as a result, plaintiff

> failed as a matter of law to meet AICRA's requirement of objective, credible evidence to support her claims of a permanent injury because the documents provided by her doctors rely solely on [p]laintiff's subjective complaints. The record is devoid of any evidence of any testing performed which reflects any objective proofs to support plaintiff's claim of permanent injury.

On appeal, plaintiff argues Federbush's "objective examination of [plaintiff's] psychiatric injuries along with assessing her history" as reflected in his report and certification provided "sufficient evidence to prove that [plaintiff] suffered severe and permanent injuries as a result of [defendant's] negligence." Plaintiff asserts "[t]here is no objective testing that [plaintiff] could have undergone to determine the severity and permanency of the psychiatric injuries caused from the motor vehicle accident" and the judge erred in finding otherwise and granting summary judgment on that basis.

We review a grant of summary judgment de novo, applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together

11                                                          A-1329-18T2

with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.

[Ibid. (quoting R. 4:46-2(c)).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying these principles, we agree with the judge that plaintiff failed to provide competent objective medical evidence from which a jury could reasonably find that she suffered a permanent psychiatric injury caused by the accident of April 11, 2015.

"The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Pertinent to this appeal, N.J.S.A. 39:6A-8(a) neither includes nor excludes permanent psychiatric or psychological injury in its definition of

"bodily injury" or "permanent injury." However, our Supreme Court has construed similar "bodily injury" language in other statutes to encompass permanent psychological or psychiatric injury. In Collins v. Union County Jail, 150 N.J. 407, 420-23 (1997), the Court held that the verbal threshold provision in the Tort Claims Act (TCA), N.J.S.A. 59:9-2(d), which limits a plaintiff's right to recover pain and suffering damages in a suit against a public entity or employee for "permanent loss of a bodily function," did not bar recovery for "a claim of permanent psychological harm in the form of post-traumatic stress disorder" resulting from a corrections officer's rape of a prison inmate. Collins, 150 N.J. at 409.

Similarly, in Saunderlin v. E.I. DuPont Co., 102 N.J. 402 (1986), the Court interpreted the provision of the Workers' Compensation Act, N.J.S.A. 34:15-36, permitting coverage for a "'[d]isability permanent in quality and partial in character . . . which restricts the function of the body or of its members or organs,'" to encompass "claims of psychiatric disability." Saunderlin, 102 N.J. at 405 (quoting N.J.S.A. 34:15-36). In reaching that result, the Court explicitly rejected "the argument that [the statutory] language excludes from compensation injuries that restrict the function of the mind as distinguished from the body." Id. at 408 n.4.

13

Because "the Legislature is presumed to be aware of judicial construction of its enactments," DiProspero v. Penn, 183 N.J. 477, 494 (2005) (citation omitted), we may conclude that at the time of AICRA's enactment in 1998, the Legislature consciously omitted from AICRA's lawsuit threshold any language limiting "bodily injury" and "permanent injury" to physical injury, so as to exclude permanent psychiatric injury from the purview of the statute. Thus, psychiatric injury may constitute a qualifying injury under N.J.S.A. 39:6A-8(a). See also Granowitz v. Vanvickle, 264 N.J. Super. 440, 445 (Law Div. 1993) (finding psychological injuries compensable under the prior no-fault statute). However, the injury must be established by "'objective clinical evidence' derived from accepted diagnostic tests and cannot be 'dependent entirely upon subjective patient response.'" Davidson, 189 N.J. at 181(quoting Serrano v. Serrano, 183 N.J. 508, 515 (2005)).

Additionally,

> [w]hen aggravation of a pre-existing injury is pled by a plaintiff, comparative medical evidence is necessary as part of a plaintiff's prima facie and concomitant verbal threshold demonstration in order to isolate the physician's diagnosis of the injury or injuries that are allegedly "permanent" as a result of the subject

14

accident. . . .[6]  In such matters, a plaintiff generally bears the burden of production in respect of demonstrating that the accident was the proximate cause of the injury aggravation or new permanent injury to the previously injured body part.  Such evidence provides essential support for the pled theory of a plaintiff's cause of action and a plaintiff's failure to produce such evidence can result in a directed verdict for defendant.

[Davidson, 189 N.J. at 185-86 (citations omitted).]

In Saunderlin, the Court set forth guidelines for determining whether psychiatric injuries satisfy the "demonstrable objective medical evidence" standard prescribed by N.J.S.A. 34:15-36 for workers' compensation claims. 102 N.J. at 411.  That standard is sufficiently similar to the "objective medical evidence" standard governing proof in limitation on lawsuit or verbal threshold cases to be instructive.  See DiProspero, 183 N.J. at 495 (holding that the Legislature adopted the "objective medical evidence" standard applied to the prior no-fault insurance law under Oswin v. Shaw, 129 N.J. 290 (1992), by requiring "objective clinical evidence" in N.J.S.A. 39:6A-8(a)); see also Agha v. Feiner, 198 N.J. 50, 60-61 (2009).

---

[6]  "Although Polk predated [amendments to N.J.S.A. 39:6A-8(a)], a Polk analysis continues to be required in cases governed by [the statute]."  Bennett v. Lugo, 368 N.J. Super. 466, 473 (App. Div. 2004) (citations omitted).

When dealing with a psychiatric injury, objective medical evidence is viewed more broadly than when dealing with physical injury.  Saunderlin, 102 N.J. at 411-14.  To fit within this paradigm, the "'diagnostic criteria' of mental disorders" as described in the Diagnostic and Statistical Manual of Mental Disorders (DSM), published by the American Psychiatric Association, must be followed.  Id. at 413.  "These diagnostic criteria typically include not only physical manifestations observable independently of the patient's statement but also descriptions of states of mind discoverable only through that statement." Ibid.  By following the DSM framework, which includes consideration of "diagnostic criteria manifestations of physical symptoms or descriptions of [the patient's] states of mind," objective medical evidence, as conceived by the profession of psychiatry, will be demonstrated.  Id. at 415.  Such evidence "might suffice to interpose a professional psychiatric judgment between the subjective statement of the [claimant]" and the ability to recover non-economic loss, within the parameters set by the Legislature.  Id. at 415-16.

However, the component of such "objective" psychiatric evidence that consists of subjective statements by the patient must include a professional analysis of those statements.  Id. at 416.  The "mere 'parroting' of the patient's statement [will never] be sufficient."  Ibid.  Courts will rely to some extent "upon

16

the psychiatrist's professionalism in deploying the clinical method to insure that his or her analysis meaningfully exceeds parroting the subjective statement of the patient." Ibid. Because "[t]he psychiatrist is perfectly aware of the fact that the clinical history obtained from the patient is distorted and self-serving," and the "reports of other physicians are not the whole story of the case," the clinical method requires the psychiatrist "to assimilate information from a wide variety of sources, to evaluate each fact, to discount some, to emphasize others, and to ignore still others." Id. at 416 n.11 (citing Diamond and Louisell, "The Psychiatrist as an Expert Witness: Some Ruminations and Speculations," 63 Mich. L. Rev. 1335, 1353-54 (1965)).

Combined with "personal observations of [the] patient," the psychiatrist then "puts everything together, and arrives at a conclusion." Ibid. The psychiatrist must explain what information was accepted and what was rejected, what information was given great weight and what was minimized, and explain why the clinical material was evaluated in a particular way. Id. at 416-17. See also Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 49 (2008) (finding that within the medical profession, there are objective standards for determining both the existence and cause of a psychiatric illness, such as post-

traumatic stress disorder. (citing Diagnostic and Statistical Manual of Mental Disorders Text Revision 466 (4th ed. 2000) (DSM-IV-TR))).

Here, Federbush's analysis did not employ the clinical method contemplated in Saunderlin. His opinion, based entirely on parroting plaintiff's statements and the reports of other physicians, presented no objective medical evidence of permanent psychiatric injury, no objective comparative analysis of plaintiff's pre- and post-accident condition, and is nothing more than an inadmissible net opinion. See Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) ("The [net opinion] rule requires that an expert give the why and wherefore that supports the opinion, rather than a mere conclusion" and "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." (citations and internal quotation marks omitted)); Hisenaj v. Kuehner, 194 N.J. 6, 23-24 (2008) (explaining in a verbal threshold case that a medical expert must provide the "why and wherefore" of his or her opinion).

Federbush provided no discussion of the DSM diagnostic criteria, no analysis of plaintiff's statements, and no observations of the physical manifestations of any symptoms subjectively claimed by plaintiff. Federbush provided no explanation of what information was accepted, what was rejected,

what was given great weight, and what was minimized, and failed to explain why the clinical material was evaluated in a particular way. Thus, plaintiff failed as a matter of law to meet AICRA's objective clinical evidence requirement to withstand summary judgment dismissal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1329-18T2