MARGIE C. ZOLDAS, Respondent, v LOUISE CAB CORPORATION et al., Appellants, et al., Defendant.

First Department, May 23, 1985

**APPEARANCES OF COUNSEL**

*Philip B. Murphy* of counsel (*Raymond G. Lawlor*, attorney), for appellants.

*Lawrence E. Pierce* of counsel (*Fisher, Fallon, Salerno & Betlesky*, attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an appeal from the denial of a motion for summary judgment dismissing the complaint for failure to meet the threshold requirement of a "serious injury" as defined by the No-Fault Law (Insurance Law § 671 [4]).

On May 28, 1978, at about 7:15 A.M., plaintiff was a passenger in a taxicab which collided with another motor vehicle at the intersection of West 53rd Street and Sixth Avenue, less than a half block from the West 53rd Street entrance to the Sheraton Centre Hotel, where she was employed as a waitress.

The police were summoned to the scene and spoke to plaintiff, who refused medical assistance. She walked the short distance to the hotel, but was then taken by a fellow employee to Roosevelt Hospital where she was examined and found to be in shock. Valium was prescribed, and plaintiff went home. Later that evening she took herself to the emergency room of New York Hospital, where she was X-rayed. Further medication was prescribed, as well as a cervical collar. Plaintiff returned to work one week later. She has never missed another day of work as a result of the accident, and continues to be employed as a waitress.

Three weeks after the accident plaintiff was examined by a neurologist, Dr. Klingon, who suggested that an EEG be taken. Dr. Guthrie, who administered the EEG, found the results to be normal. Plaintiff, still complaining of continued daily headaches and intermittent tingling of the fingers almost two years later, was reexamined on April 3, 1980 by Dr. Klingon, whose examination disclosed the presence of right upper cervical paraspinal tenderness with some restriction of neck movement. He prescribed a daily heat program. At present, plaintiff's principal complaint is that she suffers from severe and constant headaches. She also complains of back and neck pain, as well as limitation of motion and pain in her right arm.

In May of 1981, plaintiff commenced this personal injury action against Louise Cab and Irving Korn, the owner and operator, respectively, of the taxicab, as well as the operator of the other vehicle. After joinder of issue and completion of discovery, Louise and Korn moved for summary judgment dismissing the complaint for failure to meet the No-Fault Law threshold requirement of establishing a serious injury as defined in Insurance Law § 671 (4). Special Term granted the motion to the extent of directing a preliminary trial on the issue. Since it is clear, as a matter of law, that plaintiff cannot demonstrate that

she suffered a "serious injury" we reverse, grant the motion for summary judgment, and dismiss the complaint.

In enacting the No-Fault Law (L 1973, ch 13, eff Feb. 1, 1974), the Legislature modified the traditional tort precepts for disposing of automobile accident claims and instituted a plan for compensating victims without regard to fault. (*Montgomery v Daniels,* 38 NY2d 41.) The new legislation was intended to correct certain perceived infirmities under the common-law system (*supra,* at pp 49-53), and was designed to assure that, without regard to fault, automobile accident victims were promptly and fully compensated at least for their "basic economic loss". (*See, Licari v Elliot,* 57 NY2d 230.)

In order to achieve this objective, and, at the same time, to restrict the escalating cost of automobile insurance, the right of an injured person to sue for his injuries was limited to those who suffered serious injury. As the Court of Appeals noted in *Licari* (*supra,* pp 236-237): "There can be little doubt that the purpose of enacting an objective verbal definition of serious injury was to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.' (Memorandum of State Executive Dept, 1977 McKinney's Session Laws of NY, p 2448.) The verbal definition provided in the [legislation placed] a reasonable restriction and further limitation on the right to sue, in order to preserve the valuable benefits of no-fault, at an affordable cost.' (1977 McKinney's Session Laws of NY, p 2450.) The Governor voiced his support of these policies when he signed the legislation into law. (NY Legis Ann, 1977, pp 310-311; see, also, *Matter of Granger v Urda,* 44 NY2d 91, 98.)"

Thus, Insurance Law § 673 provides that, except in unusual circumstances, not here present, a person may not sue for personal injuries arising out of negligence in the use or operation of a motor vehicle in this State, except in the case of a "serious injury". In 1977 the Legislature redefined serious injury after experience had shown that the original statutory standard was too easily met, thus defeating the No-Fault Law's avowed purpose of reducing automobile accident litigation. (*See,* Memorandum of State Executive Dept, 1977 McKinney's Session Laws of NY, at 2450.) The present subdivision (4) of Insurance Law § 671 (L 1977, ch 892, § 8, eff Dec. 1, 1977) defines serious injury as "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of

a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

■ Where properly raised, the issue of whether a plaintiff is barred from recovery in the judicial forum for want of a serious injury is, in the first instance, for the court. As was noted in *Licari v Elliot* (57 NY2d, at pp 237-238): "Since the purpose of the No-Fault Law is to assure prompt and full compensation for economic loss by curtailing costly and time-consuming court trials (Memorandum of State Executive Dept, 1977 McKinney's Session Laws of NY, pp 2448, 2450), requiring that every case, regardless of the extent of the injuries, be decided by a jury would subvert the intent of the Legislature and destroy the effectiveness of the statute. The result of requiring a jury trial where the injury is clearly a minor one would perpetuate a system of unnecessary litigation. '[I]f the procedural system cannot find a way to keep cases that belong in no-fault out of the courthouse, the system is not going to work.' (Schwartz, No-Fault Insurance: Litigation of Threshold Questions under the New York Statute — The Neglected Procedural Dimension, 41 Brooklyn L Rev 37, 53.) Thus, we believe the Legislature intended that the court should decide the threshold question of whether the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy. If it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of subdivision 4 of section 671 of the Insurance Law, then plaintiff has no claim to assert and there is nothing for the jury to decide."

Summary judgment is an appropriate vehicle for determining whether a plaintiff can establish, prima facie, a serious injury. (*See Dwyer v Tracey,* 105 AD2d 476; *Nolan v Ford,* 100 AD2d 579; *Jones v Sharpe,* 99 AD2d 859, *affd* 63 NY2d 645.) Having properly raised the issue, defendants were entitled to a determination. Instead, Special Term directed an immediate trial on the issue. "Summary judgment is not a provision for an abbreviated trial of material issues of fact but merely a procedure for determining whether there are material issues of fact. Once it is determined that there are such issues of fact, summary judgment must be denied at least as to those material issues of fact."

(*Marshall, Bratter, Greene, Allison & Tucker v Mechner,* 53 AD2d 537; *see also, Southern Assoc. v United Brands Co.,* 67 AD2d 199, 201.) Special Term's direction must thus be deemed to be a denial of the motion, from which an appeal lies as of right. (*See, Vernitron Corp. v CF 48 Assoc.,* 104 AD2d 409.)

It is clear from the evidence submitted that defendants met their burden of coming forward with sufficient evidence, in admissible form, to warrant, as a matter of law, a finding that plaintiff had not suffered a serious injury within the contemplation of section 671 (4). (*See, Zuckerman v City of New York,* 49 NY2d 557; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067.) It should be noted that in her bill of particulars plaintiff limits her claim to two categories of a serious injury, namely, permanent consequential limitation of use of a body organ or member, and significant limitation of use of a body function or system.

The extent of medical treatment rendered to plaintiff on the day of the accident was the prescription of medication and a cervical collar. She returned to work one week later, and has not lost a single day of work since that time as a result of the accident. The results of an EEG taken within weeks of the accident were found to be normal. For almost two years plaintiff treated herself with aspirin and by wearing a cervical collar at night, and when she saw Dr. Klingon again in 1980 the only additional treatment prescribed was heat therapy. Even Dr. Klingon's reports noted that plaintiff has a "good range of neck movement" with no motor or sensory defects. The neurologist who examined plaintiff on defendants' behalf submitted an affidavit in which he stated that he had not found any abnormalities in the cranial nerves or restriction of movement in either the lumbosacral or cervical spine, and that motor tone and power were normal throughout with no evidence of atrophy in any of the muscle groups. Unable to find any significant abnormalities indicative of the accident's residual effects, he concluded that plaintiff was not disabled and that further medical treatment was not indicated. The paucity of her own medical evidence and the neurologist's findings thus lead inescapably to the conclusion that plaintiff did not suffer a "serious injury".

After defendants produced their evidence plaintiff had the burden of coming forward with sufficient evidentiary proof, in admissible form, to raise a triable issue of fact as to whether she had suffered a serious injury within the meaning of the No-Fault Law. (*Dwyer v Tracey,* 105 AD2d 476, *supra; Lopez v Senatore,* 97 AD2d 787; *Zuckerman v City of New York,* 49

NY2d, at p 562; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d, at pp 1067, 1068.)

Plaintiff offered three separate items of proof: an affirmation from her attorney, her affidavit, and an unsworn letter, or report, from Dr. Klingon. Plaintiff's attorney's affirmation is not entitled to any probative weight on the issue of whether she suffered a serious injury. (*Shaffer v Kasperek,* 79 AD2d 1092; *Simone v Streeben,* 56 AD2d 237; *see, Indig v Finkelstein,* 23 NY2d 728.) Therefore, it cannot raise a triable issue of fact. In her affidavit plaintiff claims to have suffered "serious and permanent physical injuries" which have left her "permanently disabled". She complains of pain and a limitation of motion in her right arm, as well as headaches and neck and back pain; and attempts to establish permanency and causation through the assertions, clearly hearsay, of what her physicians told her. Such conclusory, self-serving allegations are entitled to little weight, and are certainly insufficient to raise a triable issue of fact. The report from plaintiff's treating physician, Dr. Klingon, does not constitute evidentiary proof in admissible form. (*Ferguson v Temmons,* 79 AD2d 1090, 1091.)

*Ferguson* presents a situation sufficiently similar to warrant taking note. There, the plaintiff sought to recover for injuries arising out of an automobile accident which occurred in 1979. The defendants, supported by the affidavit of an orthopedic surgeon who found no evidence of the fracture claimed, moved for summary judgment for lack of a serious injury. In opposition, the plaintiff submitted his own affidavit, his attorney's affidavit and a copy of his physician's report. The Fourth Department reversed Trial Term's denial of the defendant's motion, holding that the plaintiff's conclusory and self-serving affidavit as well as the other evidence he presented was insufficient to demonstrate the existence of a genuine factual issue.

In order to establish either a permanent loss of use of a body organ or member, or a significant limitation of use of a body function or system, plaintiff was required to submit competent admissible medical evidence. (*Dwyer v Tracey,* 105 AD2d 476, *supra; Jones v Sharpe,* 99 AD2d 859, *supra; Simone v Streeben,* 56 AD2d 237, *supra.*) She has failed to do so. Moreover, even if plaintiff's assertions were competent they do not allege an injury which would fall within the statutory definition of a serious injury. The Court of Appeals has specifically addressed the issue, and stated, "We do not believe the subjective quality of an ordinary headache falls within the objective verbal definition of serious injury as contemplated by the No-Fault Law * * * To

hold that this type of ailment constitutes a serious injury would render the statute meaningless and frustrate the legislative intent in enacting no-fault legislation." (*Licari v Elliot,* 57 NY2d, at p 239.) Plaintiff's assertions of a limitation of movement in her right arm are also insufficient. "[T]he word 'significant' as used in the statute pertaining to 'limitation of use of a body function or system' should be construed to mean something more than a minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute" (*supra,* at p 236).

While a party opposing summary judgment may be permitted to demonstrate an acceptable excuse for failure to meet the strict requirement of tendering his proof in acceptable form (*Zuckerman v City of New York,* 49 NY2d, at p 562), plaintiff has failed to offer such excuse. Since Dr. Klingon's report cannot be accepted to prove the existence of a serious injury, no issue is presented warranting a trial.

Even if Dr. Klingon's report were competent it would still fail to provide the requisite medical evidence of a serious injury. While Dr. Klingon noted plaintiff's subjective complaints of headaches, dysesthesia and tenderness in several areas, he also found that she had a "fairly good range" of movement, that there was no objective sensory loss, nor weakness, nor atrophy and that the reflexes were symmetrical. Dr. Klingon's report does not note any consequential limitation of use of a body organ or member, nor a significant limitation of use of a body function or system. In fact, the report fails to note a limitation of any kind. Dr. Klingon's finding of a permanent upper cervical injury cannot be credited, as it is obviously premised solely on plaintiff's subjective complaints. As one court noted, "This analysis is essentially an exercise in speculation and does not rise to the level of credible medical evidence required to support [a] claim of permanency" (*Dwyer v Tracey,* 105 AD2d, at p 477).

Accordingly, the order of the Supreme Court, New York County (Ethel B. Danzig, J.), entered July 11, 1984, should be reversed, on the law, without costs or disbursements, the motion granted and the complaint dismissed.

MURPHY, P. J., BLOOM, MILONAS and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on July 11, 1984, unanimously reversed, on the law, without costs and without disbursements, the motion granted and the complaint dismissed.