**Rose DYSZEL and Robert Dyszel, h/w, Michele Dyszel and Michael Dyszel, h/w, Appellants,**

v.

**Rosie MARKS, Defendant/Third–Party Plaintiff,**

v.

**TIM'S AUTO SERVICE; Tim Doe, Third–Party Defendants,**

**Michele Dyszel, Appellant.**

**Daniel TUMOLO and Leslie Tumolo, h/w, Plaintiffs–Appellants,**

v.

**Andrew BROGAN, III, Defendant–Appellee.**

Nos. 92–5289, 92–5334.

United States Court of Appeals, Third Circuit.

Sept. 22, 1993.

Sur Petition for Rehearing with Suggestion for Rehearing In Banc Oct. 14, 1993.

---

* As to panel rehearing only.

Steven C. Gillman (Argued), Philadelphia, PA, for appellant Michele Dyszel.

Robert Lipshutz (Argued), Liss & Tintensass, P.C., Philadelphia, PA, for appellant Daniel Tumolo.

Francis X. Ryan (Argued), Green, Lundgren & Ryan, Haddonfield, NJ, for appellee Rosie Marks and for appellee Andrew A. Brogan III.

·Present: BECKER and ALITO, Circuit Judges, and ATKINS, Senior District Judge.*

---

* The Honorable C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida, sitting by designation.

## OPINION OF THE COURT

ATKINS, Senior District Judge.

This appeal presents the question of whether N.J.Stat.Ann. § 17:28–1.4 violates the Equal Protection Clause of the United States Constitution. The statute limits the right of non-residents of New Jersey to sue for non-economic (pain and suffering) loss by automatically assigning the so called verbal threshold tort option under N.J.Stat.Ann. § 39:6A–8(a) to out-of-state residents involved in accidents occurring in the State of New Jersey, solely on the basis of whether their automobile (auto) insurance carrier is authorized to transact business in the State of New Jersey.[1] Plaintiff-appellant Michele Dyszel challenges the district court's entry of a directed verdict against her where, as a matter of law, her non-economic injuries did not meet the jurisdictional requirements of the verbal threshold. Plaintiffs-appellants Daniel and Leslie Tumolo challenge the district court's entry of judgment dismissing their complaint. Furthermore, the Tumolos contend that they have established a *prima facie* case proving the verbal threshold's jurisdictional requirements. Therefore, the Tumolos assert that the district court's order should be reversed.

The appellants'[2] principal argument is that automatic assignment of the verbal threshold option to an out-of-state insured, on the basis that the auto insurer is authorized to transact business in New Jersey, is not rationally related to the purpose of N.J.Stat.Ann. § 17:28–1.4 and violates an insured's right to equal protection of the law. We conclude that the classification at issue is rationally related to New Jersey's legitimate state in-terest in establishing an insurance scheme that will compensate economic losses for all individuals injured in automobile accidents without unduly raising the cost of automobile insurance. Therefore, N.J.Stat.Ann. § 17:28–1.4 is not violative of equal protection rights. We further agree with the courts' finding that appellants are subject to N.J.Stat.Ann. § 39:6A–8(a), thus neither had a recoverable action. Consequently, we affirm both district courts' decisions.

## I. STATUTORY BACKGROUND

In this consolidated case, appellants challenge the constitutionality of N.J.Stat.Ann. § 17:28–1.4, which deems New Jersey's auto insurance "verbal threshold"[3] applicable to the residents of other states whose insurers are authorized to transact business in New Jersey, if the autos of those nonresidents are used in New Jersey. The verbal threshold prohibits suits for noneconomic damages in the absence of serious personal injury.

Section 4 of the New Jersey Automobile Reparation Reform Act, N.J.Stat.Ann. § 39:6A–1, *et seq.*, requires every auto insurance policy to provide for the payment of certain personal injury protection (PIP) benefits without regard to negligence, liability, or fault of any kind. N.J.Stat.Ann. § 39:6A–4. PIP benefits include medical expenses, income continuation, essential services, death benefits and funeral expenses. *Id.*

With respect to suits for non-economic injuries, N.J.Stat.Ann. § 39:6A–8 requires New Jersey auto owners to choose either a "verbal threshold" option or a "full coverage" option.[4] The "verbal threshold" option reads in pertinent part:

1. The term "verbal threshold" refers to the limitation on tort recovery whereby an injured party may recover non-economic losses only if the bodily injury suffered is of a type or degree that falls within one of nine defined categories set out in N.J.Stat.Ann. § 39:6A–8(a). The use of the term verbal threshold is somewhat odd and confusing, but it is derived from the fact that, as the legislation developed, the verbal threshold was offered as an alternative to a monetary threshold; it was thus a threshold "defined by words rather than dollar amounts." *Oswin v. Shaw*, 129 N.J. 290, 609 A.2d 415, 418 (1992).

2. Except where the appellants are specified as Dyszel or Tumolo, both will be referred to as "plaintiffs" or "appellants."

    Additionally, the State of New Jersey filed an amicus curiae brief in support of appellees' position, pursuant to the provisions of F.R.A.P. 29, because the constitutionality of a state statute is challenged.

3. N.J.Stat.Ann. § 39:6A–8(a).

4. If the named insured fails to elect either of the tort options offered pursuant to N.J.Stat.Ann. § 39:6A–8, he or she is *deemed* to have elected

a. Every owner, registrant, operator or occupant of an automobile to which section 4 of P.L.1972, c. 70 (C. 39:6A–4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby *exempted from tort liability for non-economic loss* to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under Section 4 of P.L. 1972, c. 70 (C. 39:6A–4), *as a result of bodily injury,* arising out of the ownership, operation, maintenance or use of such automobile in this State, *unless* that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. . . .

(emphasis added). The "full coverage" or "no threshold" option, N.J.Stat.Ann. § 39:6A–8(b), states:

the verbal threshold option. N.J.Stat.Ann. § 39:6A–8.1. Hence, the statute is commonly referred to as the "deemer statute."

5. N.J.Stat.Ann. § 17:28–1.4 reads in pertinent part:

Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of sec-

b. *As an alternative* to the basic tort option specified in subsection a. of this section, every owner, registrant, operator, or occupant of an automobile to which section 4 of P.L.1972, c. 70 (C. 39:6A–4) applies, and every person or organization legally responsible for his acts or omissions, *shall be liable for non-economic loss* to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by P.L.1972, c. 70 (C. 39:6A–4 et seq.) or is a person who has a right to receive benefits under section 4 of that act (C. 39:6A–4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State.

(emphasis added). Thus, an auto owner who accepts the verbal threshold option exempts other private passenger auto owners from tort liability for non-economic losses, unless one of the nine categories of specifically listed injuries is involved.

When a non-resident drives in New Jersey, this election is not available. N.J.Stat.Ann. § 17:28–1.4 states that non-resident auto owners who are insured by insurance companies licensed to operate in the State of New Jersey are subject to the *verbal threshold,* that is, not allowed to sue for non-economic injuries, if the insured vehicle is used or operated in New Jersey.[5] This is true whether or not the out-of-state insured has full coverage in his or her home state policy, *including* coverage for non-economic injuries.

tion 1 of P.L.1972, c. 197 (C. 39:6B–1) or section 3 of P.L.1972, c. 70 (C. 39:6A–3), the uninsured motorist insurance requirements of subsection a. of section 2 of P.L.1968, c. 385 (C. 17:28–1.1), and personal injury protection benefits coverage pursuant to section 4 of P.L.1972, c. 70 (C. 39:6A–4) or of section 19 of P.L.1983, c. 362 (C. 17:28–1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

Any liability insurance policy subject to this section shall be construed as providing the coverage required herein, and any named insured, and any immediate family member as defined in section 14.1 of P.L.1983, c. 362 (C. 39:6A–8.1), under that policy, shall be subject to the tort option specified in subsection a. of section 8 of P.L.1972, c. 70 (C. 39:6A–8). (emphasis added).

## II. PROCEDURAL HISTORY

### A. *Dyszel v. Marks*

This diversity action involved damages for personal injuries sustained by Rose and Michele Dyszel in an auto accident which occurred on February 15, 1989, in Burlington City, New Jersey. The Dyszels also sought damages for loss of consortium for Robert Dyszel, Rose's husband, and Michael Dyszel, Michele's husband.

The parties to the district court action did not dispute the issue of negligence. It was stipulated that plaintiffs, Rose and Michele Dyszel, were injured in an auto accident in New Jersey as the result of the negligence of defendant, Marks, a New Jersey resident.[6] The Dyszels were Pennsylvania residents at the time of the collision. Marks moved for summary judgment on the issue of damages, claiming that under N.J.Stat.Ann. § 17:28–1.4, the deemer statute, the Dyszels were deemed to be covered by the verbal threshold statute since they were residents of another state and because their insurer was licensed to transact business in New Jersey. Therefore, Marks alleged that the Dyszels could not recover damages for non-economic losses.

In response, the Dyszels asserted that the portion of N.J.Stat.Ann. § 17:28–1.4 deeming non-residents who operate vehicles in New Jersey to be bound by the verbal threshold is unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The United States District Court for the District of New Jersey found that the purpose of the statute, limiting insurance costs so as to make personal injury protection available to all, was a legitimate state interest.[7] Moreover, the court held that reducing the number of claims for non-economic loss, whether the claims originate from in-state or out-of-state plaintiffs, was rationally related to that interest. Therefore, on January 8, 1992, the district court ruled that the deemer statute did not violate plaintiffs' federal equal protection rights. Accordingly, the district court entered an order holding plaintiffs subject to the verbal threshold but reserving decision as to whether either plaintiff had met the requirements of the verbal threshold.

The district court then heard evidence concerning the nature of the injuries suffered by plaintiffs Michele Dyszel and Rose Dyszel. The court found that the injuries suffered by Michele Dyszel constituted non-recoverable, non-economic injuries under New Jersey's verbal threshold statute and granted a directed verdict against her on May 5, 1992.[8] The claims of Rose Dyszel and her husband went to the jury, which returned verdicts in their favor totalling $15,500. The Dyszel's Motion for Reconsideration was denied on May 7, 1992. Consequently, the Dyszels filed a timely Notice of Appeal to this Court on May 26, 1992.

### B. *Tumolo v. Brogan*

This diversity action involved damages for personal injuries sustained by Daniel Tumolo (Tumolo) in a motor vehicle accident which occurred on January 7, 1989, in Cherry Hill, New Jersey. The Complaint also included a claim for damages for loss of consortium for Leslie Tumolo, Daniel's wife.

The district court found, as a matter of law, that appellant's claim was subject to the New Jersey Lawsuit Threshold, N.J.Stat. Ann. § 39:6A–8(a), by virtue of the provisions of the deemer statute. The court also found that Tumolo's claim failed to meet the requirements of the verbal threshold and en-

---

**6.** Tim's Auto Body was named as a third party defendant by defendant Rosie Marks on June 3, 1991. On July 30, 1991, an unopposed motion for summary judgment was granted in favor of Tim's Auto Body.

**7.** The case was originally instituted in the United States District Court for the Eastern District of Pennsylvania but was transferred to the United States District Court for the District of New Jersey *by stipulation.*

**8.** The district court converted defendant Marks' Motion for Summary Judgment into a Motion for Directed Verdict on the basis of its January 8, 1992, ruling. Plaintiff Michael Dyszel, whose claim was derivative of his wife's, is not mentioned in the May 5, 1992 order concerning Marks' Motion for a Directed Verdict.

tered summary judgment in favor of Andrew Brogan.

■ On June 18, 1992, plaintiffs filed a timely Notice of Appeal to this Court from the district court's May 29, 1992 order.[9]

## III. FACTS

### A. *Dyszel v. Marks*

On February 15, 1989, appellant Michele Dyszel was riding as a passenger in a car driven by her mother-in-law, Rose Dyszel. The vehicle was involved in a rear-end collision while stopped at a red traffic light in Burlington City, New Jersey. Defendant Marks was the driver of the other car. Parties stipulated that Marks' negligence caused the accident. Both Rose and Michele suffered injuries as a result of the accident.

At the time of the accident, the Dyszels were residents of Pennsylvania and were covered by an auto liability insurance policy issued by State Farm Insurance Company (State Farm) in Pennsylvania. At all times relevant to this action, State Farm was engaged in business operations in New Jersey.

The trial judge held that although **Rose** Dyszel's injuries were sufficiently serious and did meet the requirements of the verbal threshold statute, **Michele** Dyszel's injuries were not sufficiently serious to meet the requirements. Consequently, the judge directed a verdict against Michele Dyszel at the conclusion of testimony, but prior to the jury's deliberations.

### B. *Tumolo v. Brogan*

On January 7, 1989, appellant Daniel Tumolo was driving his car when it was hit by Andrew Brogan's vehicle. At the time of the accident, Tumolo was a resident of Pennsyl-

vania with a valid Pennsylvania driver's license and maintained a Pennsylvania auto liability insurance policy issued by CNA Insurance Company—a company which transacts business in New Jersey. Brogan was a New Jersey resident at the time of the collision. As a result of the accident, Tumolo claimed that he suffered cervical, lumbosacral and thoracic strain. He alleged that these injuries were permanent in nature.

The district court listed certain facts which supported its conclusion that Tumolo failed to show a serious injury falling within any of the enumerated exceptions to the verbal threshold and denied Tumolo's Motion for Reconsideration on that determination. These facts are extensive but may be summarized as follows:

First, Tumolo sought treatment by his family physician, Dr. Silver, on January 30, 1989. In his May 12, 1990 report, Dr. Silver stated:

Impression whip lash injury.

No long term problem expected.

Rx (prescription) Naprosyn.

No follow up.

Tumolo next received treatment from another physician, Dr. Castel, between February 22, 1989, and January 18, 1990. While Dr. Castel's records indicated that appellant complained of extreme neck and back pain, his report stated that Tumolo had full range of motion in the back and neck areas, normal reflexes and motor function and intact sensation. Dr. Castel wrote:

Daniel Tumolo sustained a cervical, thoracic and lumbosacral strain and sprain in the auto accident of January 7, 1989. After almost a full year of treatment he remains

---

9. On the same day, plaintiffs filed a motion for reconsideration. The district court denied the motion some time after plaintiffs' Brief was filed in this Court. Nevertheless, the motion did not nullify the effectiveness of the notice of appeal in this case, thus depriving this court of its jurisdiction. *See generally*, Fed.R.App.P. 4(a)(4). First, if the motion was filed under Fed.R.Civ.P. 60, it did "not affect the finality of [the district court's] judgment or suspend it[s] operation and is not one of those motions specified in Fed.R.App.P. 4(a)(4) which, if timely made, renders a notice of

appeal of no effect." *Venen v. Sweet*, 758 F.2d 117, 123 (3d Cir.1985). On the other hand, if the motion was considered as a Fed.R.Civ.P. 59(c) motion, it would generally nullify the filing of the notice of appeal under Fed.R.App.P. 4(a)(4). However, since the motion was filed greater than ten days after entry of judgment, *see* Fed.R.Civ.P. 59(b), and because that time limit may not be extended, *see* Fed.R.Civ.P. 6(b), the motion has no effect on the notice of appeal. *See Venen*, 758 F.2d at 122. We note that the court does not decide whether the motion at issue was properly treated as a motion under Fed.R.Civ.P. 60(b).

symptomatic with residual pain and discomfort in the neck and midback [sic] which occurs intermittently, especially with the work he does as a musician. Since the symptoms have not changed for several months it is my opinion that as a result of the injury he has been left with a residual intermittent pain and discomfort [in] the neck and midback [sic] as a result of the accident.

Tumolo also had an orthopedic consultation with a Dr. Santangelo. Dr. Santangelo's April 6, 1989 report states:

> On examination there were a paucity of findings ... I believe [Tumolo] has had a musculoligamentous strain of the back, and with exercise I think he should have a recovery and excellent prognosis.

A fourth doctor, Dr. Pearl, examined Tumolo in September, 1989. Dr. Pearl outlined in his report that he could "find no objective clinical evidence of any significant permanent disability associated with the above mentioned injury."

Finally, on February 20, 1992, Dr. Castel, who had not examined Tumolo in over two years, submitted a supplemental medical report. In this report, Dr. Castel stated:

> On my examination of Mr. Tumolo at this visit [on February 20, 1992,] he does have fairly good range of motion in the neck and back but he definitely continues to have tenderness and spasm in the muscles in the upper thoracic region, especially on the right, as well as the trapezius muscles and upper back muscles.

> [A]s a result of the injuries sustained in an automobile accident of 1/7/89, Mr. Tumolo has been left with a significant limitation of use of the upper musculoskeletal system as described above in that he is unable to perform many of the duties that are required of him in his occupation. This condition has been present for over three years and I would again conclude that the disability is of a permanent nature at this point.

Evaluating these facts, the district court held that Tumolo suffered from an injury that did not surmount the verbal threshold.

## IV. JURISDICTION AND STANDARD OF REVIEW

In both cases, the district courts' jurisdiction was predicated upon diversity of citizenship. 28 U.S.C. § 1332. Appellate jurisdiction is based upon appellants' timely notices of appeal from entry of final judgment. 28 U.S.C. § 1291. In the first action, the Dyszels have not contested the district court's factual findings. Their appeal only involves the district court's determination, originally decided on summary judgment but implemented through entry of a directed verdict, that New Jersey's deemer statute does not violate the Equal Protection Clause of the United States Constitution. We exercise plenary review of the district court's legal determination as to the constitutionality of the statute. *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1258 (3d Cir.1991).

Tumolo's appeal arises from a district court's decision granting summary judgment in favor of the defendant. Similarly, this Court exercises plenary review of that determination. *See Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1278 (3d Cir. 1992). The district court also held that there was no material dispute as to whether Tumolo's injuries surmounted the verbal threshold statute; they did not. Thus, the court held that the injuries were not compensable. We review the district court's grant of summary judgment in favor of Brogan *de novo*. *Oswin v. Shaw*, 129 N.J. 290, 609 A.2d 415, 423 (1992) (*Oswin II*).

## V. DISCUSSION

### A. *Choice of Law*

A federal court deriving jurisdiction from diversity must apply the choice of law rules of the state in which it sits, in this case New Jersey. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), *cert. denied*, 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1942); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988). In *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 37, 417 A.2d 488, 493 (1980), the New Jersey Supreme Court formulated the choice of law

rule applying to insurance coverage disputes occurring in New Jersey and stated that

in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied *unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.*

(emphasis added). *State Farm* premised its conclusion on the Restatement (Second) of Conflicts §§ 6 and 193 (1971). *See Leksi, Inc. v. Federal Ins. Co.*, 736 F.Supp. 1331 (D.N.J.1990). The Restatement (Second) of Conflicts § 193 states in pertinent part that

[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, *unless* with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

(emphasis added).[10]

■ In this case, the "contract approach," requiring Pennsylvania law to apply, must yield to the New Jersey Legislature's policy considerations behind the deemer statute.[11] Here, unlike *State Farm*, there *are* "sufficiently cogent countervailing considerations which dictate that [Pennsylvania] insurance law not be followed to settle the claims in this litigation." *State Farm*, 417 A.2d at 493; *see infra* section B.

The result in this case is strongly supported by the specific language of *State Farm*, in which the New Jersey Supreme Court expressly stated:

There are many expressions of state public policy. We look first to legislation as a source of the state's interest in this matter. This Court in *Buzzone* [*v. Hartford Acc. and Indem. Co.*, 23 N.J. 447, 129 A.2d 561 (1957)] observed that if New Jersey chose through legislation to apply its standards as to scope of coverage for insurance policies to out-of-state insurance companies which insure out-of-state motorists, New Jersey courts would follow that directive even when the law of other jurisdictions dictated a contrary result.

*Id.* 417 A.2d at 494. In the present case, there is an explicit legislative mandate, which is the deemer clause. Moreover, in *State Farm* the applicable New Jersey and Alabama statutory law was identical, *id.*, and though the decisional law interpreting the scope of the statutory language differed, the court concluded that "the insurance laws of each state as to the extent of coverage accorded to an insured's permittee does not implicate the fundamental public policy of these states." *Id.* 417 A.2d at 495. The same cannot be said in the present case. The foundations of New Jersey's insurance regime are premised, and dependent, on its ability to keep insurance rates under control while providing no-fault PIP coverage to all individuals injured in auto accidents. Furthermore, New Jersey has an overwhelming interest in applying its own statutory scheme to insurance coverage in this context. Therefore, this Court must implement the applicable New Jersey law. We now turn to the merits of the appeal.

### B. *Equal Protection*

■ The Fourteenth Amendment to the United States Constitution prohibits a State

**10.** The Restatement of Conflicts 6(2) provides in relevant part that

the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

**11.** *See generally Adams v. Keystone Ins. Co.*, 264 N.J.Super. 367, 624 A.2d 1008 (App.Div.1993).

from denying "any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). When enacting statutes, the Legislature has "substantial latitude to establish classifications...." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, *reh'g denied,* 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982). The Judiciary's power to declare such a statute void must "be delicately exercised unless the statute is clearly repugnant to the Constitution." *Barone v. Dept. of Human Services,* 107 N.J. 355, 369, 526 A.2d 1055, 1063 (1987) (citation omitted); *David v. Vesta Co.,* 45 N.J. 301, 315, 212 A.2d 345, 352 (1965). A statute "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." [12]

■ The amount of deference shown to state-created categories varies according to the group discriminated against and the infringed upon right or interest. Under the Federal Constitution, the United States Supreme Court has employed a three-tiered analysis to review equal protection challenges, the first two tiers of which subject the legislation to heightened scrutiny.[13] Because the present case involves neither a fundamental constitutional right nor a suspect or quasi-suspect classification, it is eval-

uated under the third tier of equal protection analysis—rational basis review.

In passing upon federal equal protection challenges to similar no-fault automobile insurance statutes, other states also have uniformly applied the rational basis test. *See Murphy v. Allstate Ins. Co.,* 252 N.J.Super. 280, 599 A.2d 916, 918 (1991) (analyzing New Jersey's no fault, verbal threshold scheme under rational basis analysis); *Smith v. Firemens Ins. Co.,* 404 Pa.Super. 93, 590 A.2d 24 (Super.Ct.1991), *appeal denied,* 529 Pa. 669, 605 A.2d 334 (1992); *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982).

■ In this situation, an area "of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C.,* —— U.S. at ——, 113 S.Ct. at 2101.[14] A statute satisfies the rational basis test even if in practice it results in some inequality. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, *reh'g denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970).

■ The New Jersey Legislature claimed many reasons for enacting the current legislation. New Jersey's first objective in creating the verbal threshold was to lower auto insurance premiums for New Jersey resi-

---

**12.** *F.C.C. v. Beach Communications, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993); see *U.S. v. Carolene Products Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938) (When the court is called upon to review a legislative decision, an adequate factual basis for legislative judgment is presumed to exist.).

**13.** *Cleburne,* 473 U.S. at 439–42, 105 S.Ct. at 3253–55. The first tier includes suspect classes and fundamental rights (i.e., race, alienage, or national origin) mandating a strict scrutiny test. *Id.* at 440, 105 S.Ct. at 3254; *Bernal v. Fainter,* 467 U.S. 216, 219, 104 S.Ct. 2312, 2315, 81 L.Ed.2d 175 (1984); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Barone,* 526 A.2d at 1060. The second tier requires the legislation to be substantially related to the achievement of important governmental objectives. *See Lalli v. Lalli,* 439 U.S. 259, 264,

99 S.Ct. 518, 522, 58 L.Ed.2d 503 (1978); *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976), *reh'g denied,* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 325, 96 S.Ct. 2562, 2572–73, 49 L.Ed.2d 520 (1976); and *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

**14.** *See also Cleburne,* 473 U.S. at 446, 105 S.Ct. at 3257; *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, *reh'g denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970); *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961); *Rybeck v. Rybeck,* 141 N.J.Super. 481, 358 A.2d 828, 835 (N.J.Super.Ct.Law Div.1976), *cert. denied,* 75 N.J. 30, 379 A.2d 261 (1977); and *Frazier v. Liberty Mutual Ins. Co.,* 150 N.J.Super. 123, 139–40, 374 A.2d 1259, 1267–68 (N.J.Super.Ct.Law Div.1977).

dents.[15] Next, the Legislature intended the deemer statute to "provid[e] an effective way to materially reduce the number of automobile-related personal injury cases litigated in the courts." *Emmer v. Merin*, 233 N.J.Super. 568, 572, 559 A.2d 845, 847 (N.J.Super.Ct.App.Div.), *cert. denied*, 118 N.J. 181, 570 A.2d 950 (1989). The *Dyszel* court, in its Memorandum and Order of January 10, 1992, applied the facts of this case to the Legislature's reasoning and held that "[r]educing the number of claims for non-economic damages, whether originating from in-state or out-of-state plaintiffs, is rationally related to this legitimate state interest." The *Tumolo* court held similarly and we agree.

Appellants admit that the number of New Jersey lawsuits has been materially reduced by the enactment of no-fault liability, however, they argue that the above application does not take into account the fact that certain out-of-state residents receive full tort coverage, merely upon the happenstance that their insurance carriers are not authorized to transact business in New Jersey. Appellants claim that automatically assigning the verbal threshold to out-of-state residents, based solely upon the ability of their insurance carrier to transact business in New Jersey, does not follow these objectives.[16]

Nevertheless, appellants are treated just like any other insured who has not contributed to funding the supplemental no threshold compensation system: they are afforded basic no-fault and tort rights, subject to the verbal threshold. The only disparity of which a plaintiff could possibly complain is that he or she is not given the opportunity to elect no threshold coverage and to contribute to the funding of that system. This disparity

does not violate either the United States or the New Jersey Constitutions.

We agree with the district courts that the deemer provision of N.J.Stat.Ann. § 17:28–1.4 does not violate the equal protection guarantees of the United States Constitution because it is rationally related to legitimate purposes. The New Jersey Legislature was entitled to decide that, in general, it was desirable (a) to provide compensation for all accident victims for basic types of economic losses, without regard to fault, (b) to fund such compensation through the auto insurance system and (c) to offset the cost of providing such compensation by curtailing the rights of those suffering less serious injuries to recover in tort for non-economic losses, thereby eliminating both compensation for such losses and substantial legal fees and other loss adjustment expenses which would be necessary to process and resolve claims for such compensation.[17]

In light of the financial pressures which plagued the New Jersey no-fault system from its inception, the Legislature's decision to have those desiring supplemental tort compensation for less serious accidents pay for it themselves was reasonable. Also, the Legislature acted rationally when it did not impose that cost on other motorists or on the public at large. Moreover, impressing the administrative burden upon the auto insurance system was arguably the most efficient way for those desiring no-threshold coverage to make that election and contribute the funds necessary to support such compensation.

Plaintiffs' equal protection rights have not been transgressed. Section 39:6A–8 pro-

**15.** The Governor's Reconsideration and Recommendation Statement to Senate Bill No. 2637 (which became L.1988 c. 119) made clear that the Legislature's goal in enacting that bill was to reduce or contain the costs of auto insurance. The Governor declared that "[g]iven the present structure of our automobile insurance system, spiralling costs and the unfair treatment of good drivers are inevitable." N.J.Stat.Ann. § 17:28–1.4.

**16.** For example, appellants pose the following question:
If Driver A and Driver B, each Pennsylvania residents and insured, are injured in New Jersey

accidents by negligent New Jersey drivers, is there any rational basis to *deny* Driver A access to New Jersey courts simply because his or her insurance carrier is licensed to transact business in New Jersey, while Driver B has *full* access to New Jersey courts since his or her carrier is not licensed to sell insurance in New Jersey?

**17.** *See Rybeck*, 141 N.J.Super. at 492–96, 358 A.2d at 832–34 (describing background and purposes of the no-fault act); *Frazier*, 150 N.J.Super. at 132–33, 374 A.2d at 1264–65 (discussing necessary tradeoffs in creating system).

vides that New Jersey residents must choose between the verbal and full tort options, 8(a) and (b), respectively. Residents who choose the verbal option lose their right to sue for non-economic loss unless they meet one of the exceptions listed in 8(a). Under the deemer statute, **residents of other states who have insurance with companies doing business in New Jersey receive significant benefits as well as certain limitations,** such as losing the cause of action for non-economic injuries. For example, the deemer statute ensures that most out-of-state drivers who become involved in accidents in New Jersey receive uninsured motorist protection and $250,000 [18] of personal injury protection.[19] In return for this protection, out-of-state residents who have insurance with companies doing business in New Jersey are required to meet the standards of New Jersey's verbal threshold law in order to sue for non-economic injuries.

This plan is rational. The Legislature chose insurance companies licensed to do business in New Jersey because New Jersey has the greatest amount of control over such companies. Since this group includes the largest auto insurers (such as State Farm), the legislation can reasonably be expected to have the desired effect.

There is also a clear rational basis to support the Legislature's determination that out-of-state residents who operate autos in New Jersey should be *precluded* from recovering for non-economic loss unless the verbal threshold is satisfied. Inherent in the no-fault system is a statutory right to recover damages without the need to satisfy a threshold. The cost of such recovery must be paid out of the auto insurance system. Appellants, and those who would fall into their category, are not New Jersey insured. As such, they are not in a position to finance the cost of non-threshold coverage. Given this situation and the Legislature's desire to reduce or contain the cost of auto insurance, the legislative judgment was rationally consistent with the purpose of the statute. Furthermore, if the broadest coverage (no threshold) was provided to persons who did not pay for it, then the added cost to the insurer would have to be borne by others, namely consumers who purchase auto insurance. The Legislature reasonably concluded that such a situation would not foster reduced auto insurance premiums.

Section 6 of L.1988, c. 119, amended N.J.Stat.Ann. § 39:6A–8, effective January 1, 1989. The amendment changed the options available to a New Jersey insured in selecting the tort threshold that governed his or her right to recover for non-economic loss.[20] The change was designed to reduce the cost of auto insurance by providing a larger barrier to suits for non-economic loss than the monetary threshold that existed at that time. The effect was to produce a market whereby 81.09% of New Jersey autos were insured under the verbal threshold as of December 31, 1989.

The assertion that the statute is flawed because it only applies to non-residents if they have insurance with a carrier who transacts auto insurance business in New Jersey simply demonstrates that the Legislature has drawn a line between classes. The line need not be perfect as long as it is intended to accomplish some legitimate objective.

This premise has been accepted in Pennsylvania. In *Firemens,* 404 Pa.Super. 93,

---

**18.** At the time of the accident underlying this case, there was no upper limit on medical benefits. L.1990, c. 8 section 4.

**19.** *See Firemens,* 404 Pa.Super. at 93, 590 A.2d at 24; *D'Orio v. West Jersey Health Services,* 797 F.Supp. 371 (D.N.J.1992); and *Ohio Cas. Ins. Co. v. Continental Ins. Co.,* 101 Misc.2d 452, 455, 421 N.Y.S.2d 317, 319–20 (N.Y.Sup.Ct.1979).5

**20.** Before the enactment of the 1988 amendments, the insured had two options: select a $200 tort threshold, the "basic" tort option, or a $1500 tort threshold (increased annually to reflect increases in the medical care services por-

tion of the National Consumer Price Index). The statute required an election of either one or the other and if no election was made, the $200 was deemed elected. Also, those not required to purchase auto insurance were assigned the basic tort option.

After the 1988 amendments, the basic tort option became the "lawsuit" or "verbal" threshold. The other became the "no threshold" option. Insurers charged a higher premium to persons electing the latter option because the insurer was at greater risk to pay these claims.

590 A.2d 24, the Superior Court of Pennsylvania held that New Jersey's Compulsory Insurance Law provisions requiring New Jersey insurance companies to pay unlimited first party benefits to an out-of-state insured who operated her vehicle in New Jersey was applicable to that case despite the limits contained in the Pennsylvania auto insurance policy. The court stated:

> application of the New Jersey law furthers several of New Jersey's interests, that is, the interest in having out-of-state residents who are injured while travelling on New Jersey highways receive coverage for their reasonable medical expenses; the interest in having the rights of insurance companies authorized to do business in New Jersey governed by New Jersey law; and the interest in having sister states give full faith and credit to its insurance law.

590 A.2d at 27.

New Jersey has a legitimate interest in insurance claims. The legislation strikes an appropriate balance by ensuring that all who drive in New Jersey receive the benefits necessary to provide for their medical treatment. In return for this benefit, non-residents must meet a reasonable threshold in order to receive payment for non-economic loss. *See generally Adams v. Keystone Ins. Co.,* 264 N.J.Super. 367, 624 A.2d 1008 (N.J.App.Div.1993).

Accordingly, we hold that the New Jersey deemer provision of N.J.Stat.Ann. § 17:28–1.4 does not violate the equal protection guarantees of the United States Constitution.

## C. *Verbal Threshold Requirements* (*Tumolo v. Brogan* ONLY)

At the time of the accident, appellant Tumolo was employed as a musician which required prolonged periods of sitting and standing. Due to the accident, Tumolo stated that he could no longer sit or stand for extended periods of time. This substantially affected his usual and customary activities associated with his job.

Following the accident, Dr. Castel treated Tumolo for injuries associated with the accident. On February 20, 1992, Dr. Castel examined Tumolo based upon continued complaints of pain in his neck and back allegedly caused by the accident. In his report, Dr. Castel stated that:

> he does have fairly good range of motion in the neck and back but he definitely continues to have tenderness and **SPASM** in the muscles in the upper thoracic region, especially on the right, as well as the trapezius muscles and upper back muscles.

> [A]s a result [of] the injuries sustained in an automobile accident of 1/7/89, Mr. Tumolo has been left **with a significant limitation of use of the upper musculoskeletal system as described above in that he is unable to perform many of the duties that are required of him in his occupation.** This condition has been present for over three years and I would again conclude that the disability is of a permanent nature at this point.

(emphasis added).

In order to determine whether appellant Tumolo met the requirements of the verbal threshold, the court must answer two questions. *Oswin II,* 609 A.2d at 423. First, we must determine whether Tumolo's injury would, if proven, meet the requirement(s) encompassed within one of the nine statutory categories under N.J.Stat.Ann. § 39:6A–8(a). *Id.* If so, we must then decide "whether the evidence before the court on a motion for summary judgment demonstrates a material dispute of fact regarding the nature and extent of [Tumolo's] injuries." *Id.* Upon an affirmative finding of both requirements, the court must submit the question to the jury to resolve the nature and extent of the injuries. *Id.* at 417.

A plaintiff is barred from recovering damages for non-economic loss unless he or she has sustained a personal injury which falls within one of the exceptions enumerated in N.J.Stat.Ann. § 39:6A–8(a). Appellant Tumolo states that the district court erred in granting summary judgment to Brogan and holding as a matter of law that Dr. Castel's diagnosis did not prove his injuries were "serious" enough to fall within these categories. Tumolo argues that he suffered injuries falling within, at a minimum, categories

seven and eight of N.J.Stat.Ann. § 39:6A–8(a).[21]

■ Under categories seven and eight, a plaintiff must show a "serious injury."[22] To establish a "serious injury," appellant must submit *"objective, credible* evidence that could support a jury finding in his or her favor" rather than upon "plaintiff's proofs ... based solely on subjective complaints of pain." *Oswin II,* 609 A.2d at 429; *see Granowitz v. Vanvickle,* 264 N.J.Super. 440, 624 A.2d 1047 (N.J.Super.Ct.Law Div.1993). Under *Oswin II,* and *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (N.Y.1982), plaintiff "must show a nexus between the injury and the disability.... [Further,] a plaintiff must show that 'the injury had a serious impact on the plaintiff and her life.' " *Oswin II,* 609 A.2d at 429 (quoting *Oswin v. Shaw,* 250 N.J.Super. 461, 470, 595 A.2d 522, 527 (N.J.Super.Ct.App.Div.1991) (*Oswin I* )); see *Siriotis v. Gramuglia,* 254 N.J.Super. 223, 228, 603 A.2d 154, 157 (N.J.Super.Ct.Law Div.1991).

Applying the reasoning of *Oswin II* to the instant matter, Tumolo contends that he suffered a "serious" and "permanent" type of injury supported by objective, credible evidence that "fits" into the statutory verbal threshold. Tumolo alleges that the district court disregarded the doctor's examination and his objective findings of spasm. A determination that Tumolo suffers permanent spasms, he argues, is a real, objective medical finding. In view of Tumolo's occupation as a musician, Tumolo submits that he made a *prima facie* case to support the conclusion that, under the exceptions to N.J.Stat.Ann. § 39:6A–8(a), he suffered a "serious injury" to allow him to recover for non-economic losses. We disagree.

■ First, Tumolo failed to establish a "permanent consequential limitation of use of a body organ or member" under exception number seven. In order to demonstrate an injury under this exception, Tumolo must "present competent evidence raising triable issues as to whether [his] injury [is] *both* permanent and consequential." *Kordana v. Pomellito,* 121 A.D.2d 783, 784, 503 N.Y.S.2d 198, 200 (N.J.Super.Ct.App.Div.), *appeal dismissed,* 68 N.Y.2d 848, 508 N.Y.S.2d 425, 501 N.E.2d 33 (1986) (emphasis added). Appellant's self-serving allegations are entitled to little weight, and are insufficient to raise a triable issue of fact. *See Oswin II,* 609 F.2d at 428–29; *Zoldas v. Louise Cab Corp.,* 108 A.D.2d 378, 382, 489 N.Y.S.2d 468, 472 (N.Y.App.Div.1985).

In *Oswin II,* the pivotal issue upon which a court could find permanence of an injury was whether the injury had a **serious impact** on the plaintiff and her life. 609 A.2d at 429. Applying that reasoning to the case *sub judice,* Dr. Castel's February 20, 1992, lone re-

---

**21.** The various injuries which a plaintiff must suffer in order to sustain his or her cause of action for non-economic injuries are:

[1] death; [2] dismemberment; [3] significant disfigurement; [4] a fracture; [5] loss of a fetus; [6] permanent loss of use of a body organ, member, function, or system; [7] permanent consequential limitation of use of a body organ or member; [8] significant limitation of use of a body function or system; or [9] a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.

N.J.Stat.Ann. § 39:6A–8(a).

**22.** In a statement to the Senate regarding the statute, Thomas H. Kean, Governor of New Jersey, stated that:

[i]t is my intention that the term "serious injury," as defined in this recommendation, shall be construed in a manner that is consistent with the New York Court of Appeals' decision in *Licari v. Elliott,* 57 N.Y.2d 230 [455 N.Y.S.2d 570, 441 N.E.2d 1088] (1982). Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not the jury. Otherwise, the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished. In addition, strict construction of the verbal threshold is essential; any judicial relaxation of this plain language will impede the intent of maintaining the substantial benefits of no-fault at an affordable price.

Governor's Reconsideration and Recommendation Statement to Senate, No. 2637–L.1988, c. 119; *see* N.J.Stat.Ann. § 17:28–1.4. The Supreme Court of New Jersey subsequently adopted *Licari's* definition of "serious injury" in *Oswin II,* 609 A.2d at 427–28.

port is inadequate to raise any genuine issue of material fact showing **serious impact** on appellant's life. The New Jersey "Legislature sought to guard against a finding of 'serious injury' when plaintiff's proofs are based solely on subjective complaints of pain." *Id.* Here, the doctor's only finding was tenderness and spasm. A finding of spasm may be sufficient to constitute "objective, credible evidence" in some cases, however, in this case, Tumolo has simply not shown enough. The mere mention of the word "spasm" and of what basically amounts to a conclusory paraphrasing of the statutory language cannot by itself defeat a summary judgment motion. *Id.* at 430. Finally, appellant's doctor admitted that Tumolo had a "fairly good range of motion" in his neck and back.[23]

Applying the *Licari* standard, the New York Appellate Division has granted summary judgment in cases where a plaintiff has proven far more than Tumolo has demonstrated in the instant case. *See, i.e., Guzzardi v. Crawford,* 106 A.D.2d 750, 483 N.Y.S.2d 784 (N.Y.App.Div.1984) (plaintiff suffered from minor lumbar strain and a cerebral concussion and had worn neck and back supports); *Padron v. Hood,* 124 A.D.2d 718, 719, 508 N.Y.S.2d 472, 473 (N.Y.App.Div.1986) (plaintiff suffered a cerebral concussion, scolistic deformity of the thoracic spine, cervical sprain and lumbosacral sprain).[24] Here, appellant has failed to set forth any evidence of inability to perform, or limitation of performing, any such activities.[25] Consequently, the district court's determination that there was no genuine issue of material fact regarding whether the injuries had a serious impact on Tumolo's life was correct.

Furthermore, Tumolo failed to establish a "**significant** limitation of use of a body function or system" under exception number eight. The limitation under this category need not be permanent. However, the injury must relate to a body function or system. "Function" is defined as "the normal and specific contribution of any bodily part . . . to the economy of a living organism." Webster's Third New International Dictionary 921 (1986). "System" is defined as an "[o]rderly combination or arrangement, as of particulars, parts, or elements into a whole. . . ."[26] Tumolo's injury affects neither a function nor system as defined herein.

A "significant limitation" must be more than minor, mild, or slight. *See Oswin II,* 609 A.2d at 428; *Licari,* 57 N.Y.2d at 236, 455 N.Y.S.2d at 573, 441 N.E.2d at 1091. Not all restrictions amount to significant limitations. *See Palmer v. Amaker,* 141 A.D.2d 622, 529 N.Y.S.2d 536 (N.Y.App.Div.1988) (no significant limitation was found where plaintiff suffered from lumbar and cervical sprains as well as a knee sprain and a mild limitation of motion of the thoraco-lumbrosacral spine); *Grotzer v. Levy,* 133 A.D.2d 67, 68, 518 N.Y.S.2d 629, 630 (N.Y.App.Div.1987), *appeal denied,* 70 N.Y.2d 611, 523 N.Y.S.2d 495, 518 N.E.2d 6 (1987) (the court did not consider plaintiff's injuries significant where she suffered some restriction in the motion of her neck and lower back); and *Kordana,* 121 A.D.2d 783, 503 N.Y.S.2d 198. Here, the neck and back are only parts of a greater system, not an individual system. The limitation must relate to the overall "system" being examined. None has been shown here.

---

**23.** Note that proof of serious injury through range-of-motion tests "ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation." *Oswin II,* 609 A.2d at 430. Such tests are discounted because they "are based only on patients' pain responses." *Id.*

**24.** *See also Daviero v. Johnson,* 88 A.D.2d 732, 451 N.Y.S.2d 858 (N.Y.App.Div.1982) (for purposes of insurance law, plaintiff failed to establish "serious injury" where he was absent from

work for 54 days and suffered from occasional headaches).

**25.** Also, in *Zoldas v. Louise Cab,* the court granted defendant's motion for summary judgment where the plaintiff's subjective complaints of headaches, dysesthesia and tenderness were insufficient to note a **limitation.** 489 N.Y.S.2d 468, 473 (N.Y.App.Div.1985).

**26.** Black's Law Dictionary 1450 (6th ed. 1990). *See Siriotis,* 254 N.J.Super. at 233, 603 A.2d at 159.

In summary, Tumolo was obligated to establish a *prima facie* case to meet the verbal threshold. Tumolo failed to show a genuine issue of material fact to support the contention that his injuries were "serious" or that his loss of use of any "bodily organ, member, function, or system" was "permanent" or "significant". *Oswin II*, 609 A.2d at 423. Thus, the district court's decision to grant summary judgment in favor of appellee Brogan was proper.

## VI. CONCLUSION

N.J.Stat.Ann. § 17:28–1.4, which makes New Jersey's auto insurance verbal threshold, N.J.Stat.Ann. § 39:6A–8(a), applicable to the residents of other states wherever the autos of non-residents are used in New Jersey does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Herein, there is a reasonable basis for the recognition of separate classes, and the disparate treatment of the classes has a rational relation to the object sought to be achieved by the New Jersey Legislature.

In this case, the lower courts correctly applied the verbal threshold to both plaintiffs-appellants. In *Dyszel v. Marks*, the district court entered a directed verdict against plaintiff, Michele Dyszel, because she did not present evidence of such a nature to include her within the exceptions to the verbal threshold in order to sue for non-economic injuries. The *Dyszel* court correctly applied the deemer statute, thus the decision is affirmed.

In *Tumolo v. Brogan*, the district court granted defendant Brogan's Motion for Summary Judgment and dismissed plaintiff Tumolo's complaint for failing to establish a *prima facie* case by meeting the verbal threshold. The district court's finding that Tumolo did not present a genuine issue of material fact to establish an exception to the verbal threshold was correct. Therefore, the decision is also affirmed.

* As to panel rehearing only.

**SUR PETITION FOR PANEL REHEARING WITH SUGGESTION FOR REHEARING IN BANC**

Oct. 14, 1993.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges, and ATKINS, District Judge.*

The petition for rehearing filed by Appellant, having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges in active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, AND the petition for rehearing is DENIED.